**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Edwin S. Toporek, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No.: 2:07-1610-CWH |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| MBT International, Inc., MBT Holding | ) | |
| Corp., American Capital Strategies, Ltd., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action arises out of the plaintiff's efforts to enforce a promissory note issued by the plaintiff in the amount of $1,400,000.00.

I. Plaintiff's Allegations

The plaintiff Edwin S. Toporek ("Toporek") and his wife Sharon H. Toporek, the ALT Trust, the Edwin S. Toporek and Sharon H. Toporek First Charitable Remainder Unitrust, and the Edwin S. Toporek and Sharon H. Toporek Second Charitable Remainder Unitrust collectively owned MBT International, Inc. ("old MBT"), a South Carolina Corporation. On July 16, 1999, pursuant to the terms of a stock purchase agreement, old MBT's owners sold old MBT to the defendant MBT International, Inc. ("new MBT"), a Delaware corporation, for $16,400,000.00. New MBT paid $15,000,000.00 in cash and gave Toporek a promissory note in the amount of $1,400,000.00. Immediately after the purchase, the defendant American Capital Strategies, Ltd. ("ACS") took over the management and control of new MBT. ACS made the decisions regarding the payments to be made to the plaintiff. Toporek served on the board of directors for new MBT.

New MBT made some but not all of the interest payments due under the promissory note and did not make any of the principal payments due under the promissory note. ACS and new MBT advised Toporek that new MBT intended to acquire another company and that new MBT would pay off the promissory note by refinancing the debt when it purchased the company. Toporek voted in favor of the acquisition, but new MBT did not pay off the promissory note.

On July 16, 2004, new MBT bought real property located at 620 Dobbin Road in Charleston, South Carolina, (hereinafter "620 Dobbin Road"), for $2,400,000.00. On August 5, 2005, ACS sold new MBT to Kaman Music, Inc. ("Kaman"). Kaman purchased new MBT's trade names, assets, domain names, websites, and intellectual property. Kaman did not purchase new MBT's real property located at 620 Dobbin Road. Toporek alleges that in the course of the sale of old MBT, he was not paid the debt owed pursuant to the terms of the promissory note. On September 30, 2005, new MBT paid property taxes on the real property located at 620 Dobbin Road. On October 6, 2005, Dan Mahoney ("Mahoney"), new MBT's agent, changed new MBT's name to Eclipsed Melody.[1]

II. Procedural History

On May 2, 2007, Toporek brought this action asserting claims for breach of contract, breach of contract accompanied by a fraudulent act, instrumentality- alter ego, breach of covenant of good faith and fair dealing, intentional interference with contractual relations, and breach of fiduciary duty. Toporek claims that new MBT owes the principal of $1,400,000.00 on the promissory note. On June 8, 2007, the defendants removed this action to this court on the basis of diversity of citizenship.

---

[1] New MBT is hereinafter referred to as Eclipsed Melody.

III.  Motion to Remand

On June 26, 2007, the plaintiff filed a motion to remand.  The plaintiff claims that Eclipsed Melody is a Delaware corporation with its principal place of business in South Carolina.[2]  The citizenship of Eclipsed Melody is the sole issue on this motion to remand.

A civil cause of action may be removed from state court to federal court "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).  The party seeking removal bears the burden of establishing the existence of diversity jurisdiction between the parties.  Sonoco Products Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 370 (4th Cir. 2003).  Diversity jurisdiction depends on the citizenship of the parties at the time an action commences.  Athena Automotive v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999).

A corporation is deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business.  28 U.S.C. § 1332(c)(1).   The parties in this action dispute whether Eclipsed Melody had its principal place of business in South Carolina when this action commenced in May of 2007.

To determine where a corporation has its principal place of business, a court may apply two different tests: the nerve center test or the place of operations test.  Id.  When a corporation engages primarily in the ownership and management of geographically diverse investment assets, a court should apply the nerve center test, which establishes the corporation's principal

---

[2] The plaintiff claims that Eclipsed Melody's charter has been administratively revoked due to non-payment of taxes.  The legal existence of all Delaware corporations, "whether they expire by their own limitations or are otherwise dissolved is continued for three years from such expiration or dissolution . . . for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them."  Del. Code Ann. Tit. 8 § 278.

place of business as the place where the corporation makes the home office or the place where the corporation's officers direct, control, and coordinate its activities. Id. However, when the corporation has multiple centers of manufacturing, purchasing, or sales, a court applies the place of operations test, which focuses on the place where the bulk of corporate activity takes place. Id.

When this action commenced in May of 2007, Eclipsed Melody was an inactive corporation. Since August 5, 2005, Eclipsed Melody has been winding up its affairs. Eclipsed Melody has no employees. Mahoney is Eclipsed Melody's authorized agent and oversees the winding up process and the resolution of taxation and accounting issues. Eclipsed Melody maintains a post office box in North Charleston. On July 12, 2007, Eclipsed Melody sold its property located at 620 Dobbin Road.

The circuits are split on the issue of the citizenship of an inactive corporation. The Second Circuit considers an inactive corporation to be a citizen of its state of incorporation and the state where it last transacted business. Wm. Passalacqua Builders v. Resnick Developers South, 933 F.2d 131, 141 (2d Cir. 1991). The Third Circuit holds that an inactive corporation is a citizen only of its state of incorporation because it has no place of business. Midatlantic Nat'l Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995). The Fifth Circuit has held that when a business has been inactive for a substantial period of time, it is a citizen only of its state of incorporation, but the citizenship of an inactive corporation must be addressed on a case by case basis. Harris v. Black Clawson Co., 961 F.2d 547, 551 (5th Cir. 1992).

In Athena Automotive v. DiGregorio, the Fourth Circuit addressed "the novel question of . . . the citizenship for diversity jursidiction purposes of an inactive corporation." Athena

Automotive v. DiGregorio, 166 F.3d at 290-91 (4th Cir. 1999).  The court noted that a "corporation's business does not usually end with the abruptness of closing its doors.  Even when a corporation has ceased all operations and has become inactive, the continuing impact of its business in a given locale could linger on to an extent sufficient to give it a geographical identity there as its principal place of business."  Id. at 291.  Therefore, "[d]eterminations of [an inactive] corporation's principal place of business must be made on a case by case basis.  And a court must analyze the facts of each case to determine as of the date the action was commenced whether a corporation's business activity was sufficient to make it a citizen of the state of such activity."  Id. at 291.

     Athena Automotive ("Athena") was a Georgia corporation who carried out all of its business activity in Maryland until it closed its doors in 1994.  After closing, Athena maintained its charter in good standing with the Georgia Secretary of State.  The only other activity related to its former business operations was to prosecute litigation in Maryland against DiGregorio, a Maryland resident.  The litigation was orchestrated from Virginia, where Athena's sole stock holder lived.  The Fourth Circuit Court of Appeals held that there was diversity between the parties.  Athena's three year absence from Maryland rendered Athena "just the type of out-of-state citizen for whom Congress sought to provide a federal forum by creating diversity jurisdiction."  Id. at 292.

     Eclipsed Melody's situation is somewhat different from Athena's.  First, three years passed between the closing of Athena's doors and commencement of the action.  On the other hand, this action commenced in May of 2007, just 21 months after Eclipsed Melody closed its

doors on August 5, 2005.³  Second, Eclipsed Melody has carried out significantly more activities in South Carolina than Athena did in Maryland.  After closing, Athena maintained its charter in good standing with the Georgia Secretary of State and prosecuted litigation in Maryland against a Maryland resident.  The litigation was orchestrated from Virginia, where Athena's sole stock holder lived.  In this case, Eclipsed Melody has an agent in South Carolina who resolves taxation and accounting issues.  Eclipsed Melody maintains a post office box in North Charleston and has sold its real property located on Dobbin Road.

Whether South Carolina is Eclipsed Melody's principal place of business is the issue before this Court.  The Fourth Circuit Court of Appeals did not determine Athena's principal place of business after closing its doors.  However, the following dicta offers some guidance:

> While Athena Automotive was unquestionably a citizen of Georgia, its state of incorporation, *see* 28 U.S.C. 1332(c)(1), whether it also actually had a place of business at the commencement of this action is not a matter that we need to decide, since it did not have its principal place of business in Maryland.  Because the defendants were Maryland citizens and Athena Automotive was not a Maryland citizen, and was at least a Georgia citizen, complete diversity therefore existed.  If, however, we were required to find a principal place of business for applying § 1332, we might, by applying our "nerve center test," conclude that Athena Automotive's only business was to pursue this litigation, an activity that

---

³ The Fifth Circuit Court of Appeals has held that a corporation which has been inactive for a "substantial period of time" is a citizen only where it is incorporated.  Harris v. Black Clawson Co., 961 F.2d 547, 551 (5th Cir. 1992) (holding that where a corporation had been inactive in a state for 5 years, that state is not the corporation's principal place of business. Whether the 21 month time period in this case would be deemed substantial appears to be a close call.  Seelye v. Cornwaite, Inc., 2007 WL 28460, *9 (D. Mont. Jan. 3, 2007) (holding that 19 months is a close call but that the defendant was not a Montana corporation because its last business transactions were not in Montana and that the defendant's acts in Montana during 19-month period of inactivity had little impact in Montana); Sellers v. Kohlberg & Co., LLC, 2001 WL 761187, *4 (N.D. Cal. June 29, 2001) (holding that under a California statute, inactive and dissolved corporations have a local impact for at least two years); Norsworthy v. Mystik Transport, 430 F. Supp.2d 631, 635-36 (E.D. Tex. 2006) (holding that 6 months of inactivity between dissolution and commencement of the action was not substantial).

was being conducted from Fairfax, Virginia.

<u>Athena Automotive v. DiGregorio</u>, 166 F.3d at 292.  The nerve center test establishes the corporation's principal place of business as the place where the corporation makes the home office or the place where the corporation's officers direct, control, and coordinate its activities. <u>Id.</u> at 290.  New MBT directed, controlled, and coordinated its business activities in South Carolina.  Now, Eclipsed Melody directs, controls, and coordinates the winding up of the business in South Carolina.  Therefore, the Court holds that Eclipsed Melody's principal place of business is South Carolina.

The Court grants the plaintiff's motion to remand and remands this action to the Court of Common Pleas for Charleston County.


**AND IT IS SO ORDERED.**


*/s/ C. Weston Houck*

**C . WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**


November 6, 2007
Charleston, South Carolina